IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Henry McMaster, in his official capacity as Governor of the State of South Carolina, and South Carolina Department of Labor, Licensing & Regulation,<br><br>Plaintiffs,<br><br>v.<br><br>United States Department of Labor; Martin J. Walsh, in his official capacity as Secretary of Labor; Occupational Safety and Health Administration; and Douglas Parker, in his official capacity as Assistant Secretary for Occupational Safety and Health,<br><br>Defendants. | Case No. 3:22-cv-2603-SAL<br><br><br><br><br><br>**ORDER** |

Before the court are Plaintiffs' Motion for Preliminary Injunction, ECF No. 8, and Defendants' related Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), ECF No. 20. For the reasons below, the court concludes it lacks subject matter jurisdiction because the complaint does not challenge reviewable "agency action" under the Administrative Procedure Act ("APA"). The court thus grants Defendants' motion to dismiss, ECF No. 20, and has no jurisdiction to reach the merits of Plaintiffs' substantive claims.

**BACKGROUND & PROCEDURAL POSTURE**

This administrative matter arises out of the United States Department of Labor ("DOL") and the Occupational Safety and Health Administration's ("OSHA") interpretation of federal law to require South Carolina state OSHA plan penalties to match federal penalty amounts. According to Governor Henry McMaster and the South Carolina Department of Labor, Licensing and Regulation ("LLR"), DOL and OSHA have taken to enforcing that requirement with

1

unprecedented vigor.

I.  **Federal OSHA Statutory and Regulatory Landscape and the SC State Plan**

Congress enacted the Occupational Safety and Health Act ("OSH Act"), 29 U.S.C. § 651 *et seq* in 1970 to ensure "safe and healthful working conditions." The OSH Act created OSHA as part of DOL and directed the Secretary of Labor to promulgate for OSHA's enforcement workplace safety and health standards, *id.* §§ 651(b), 655(a).[1] OSHA standards must be "reasonably necessary or appropriate to provide safe or healthful employment[,]" *id.* § 652(8), and must follow a rigorous process, including notice, comment, and an opportunity for a public hearing, *id.* § 655(b).

States can allow the federal government to regulate and enforce workplace safety standards in the state directly, or they can submit a state-specific plan for the Secretary's approval. *See id.* § 667(b); 29 C.F.R. § 29.1902.1 *et seq.* Like 21 other states, South Carolina administers its safety and health standards through an approved, state-run OSHA plan ("State Plan"). [ECF No. 1, ¶ 4.] According to Plaintiffs, LLR has successfully run the State Plan, ensuring workplace safety and health in the state for over four decades. [*See* ECF No. 1 ¶ 34; ECF No. 8 at 21–22, 24–25.] To maintain OSHA approval, state plan standards must be "at least as effective as" federal standards "in providing safe and healthful employment and places of employment." 29 U.S.C. § 667(c)(2). OSHA measures a state plan's "alternative standards, procedures, criteria, and rules … against" various "indices of effectiveness" to determine whether it meets the "at least as effective" standard. 29 C.F.R. 1902.4.

---

[1] The Secretary of Labor delegated his responsibilities under the OSH Act to his Assistant Secretary for Occupational Safety and Health, who heads OSHA. The parties and the court generally refer to the defendants collectively and interchangeably here.

The OSH Act imposes civil and criminal penalties for violating the standards in the act. 29 U.S.C. § 666. Congress amended those penalties in 1990. [ECF No. 1 ¶ 18.] The State Plan also includes civil enforcement penalties in the amount of $70,000 and $7,000 depending on the type of violation. [ECF No. 1 ¶ 35; S.C. Code Ann. § 41-15-320.] These civil penalties match those set forth in the OSH Act. *See* S.C. Code Ann. § 41-15-320; 29 U.S.C. § 666. The State Plan penalty amounts have not changed since the OSH Act amounts were last amended in 1990. And while Congress made additional regulatory adjustments in 1996, those adjustments did not affect the OSH Act. [ECF No. 19 at 11.]

Unfortunately, nothing gold can stay.[2] In 2015, Congress passed the Federal Civil Penalties Inflation Adjustment Act, 28 U.S.C. § 2461, which *did* impact the OSH Act. The act required OSHA to (1) make an initial catch-up inflation adjustment to federal civil penalty amounts "through an interim final rulemaking," which OSHA did on July 1, 2016, 81 Fed. Reg. 43,430 ("IFR"), and then to (2) annually adjust federal civil penalties for inflation, 28 U.S.C. § 2461, which OSHA has done since 2017. [ECF No. 1 ¶¶ 20–25.] As a result, OSHA increased its maximum civil penalties significantly: as of the 2022 adjustment, the federal civil penalties have more than doubled. *Compare* S.C. Code Ann. § 41-15-320; *with* 29 U.S.C. § 666; *and* 87 Fed. Reg. at 2336. These inflation adjustments are exempt from APA notice and comment.[3] *See* 28 U.S.C. § 2461.

The IFR also "amends" one of the OSHA regulatory indices of effectiveness metrics by adding a reference to OSHA's annual maximum civil penalty adjustments at 29 C.F.R. §

---

[2] Robert Frost, *Nothing Gold Can Stay.*
[3] Pursuant to 28 U.S.C. § 553, rules are generally proposed for public comment, commented on, revised, and then published by the relevant federal agency as a final rule. An interim final rule is effective immediately upon publication without the prior comment period.

1903.15(d).  *See* 81 FR 43430-01.  Prior OSHA regulations provided that OSHA considers whether the state plan "[p]rovides effective sanctions against employers who violate State standards and orders, such as those set forth in the Act."  The 2016 IFR amendment, however, states that OSHA will assess whether the state plan "[p]rovides effective sanctions against employers who violate State standards and orders, such as those set forth in the Act *and in 29 CFR 1903.15(d)*."  *See* 29 C.F.R. § 1902.4(c)(11) (emphasis added); *see also* 36 Fed. Reg. 20,751, 20,754 (Oct. 29, 1971) (codified at 29 C.F.R. § 1902.4(c)(2)(xi)) (original language).

The 2016 IFR stated that "OSHA's penalty increases under the Inflation Adjustment Act will necessitate an increase to the maximum and minimum penalty amounts required by states that administer their own occupational safety and health programs as well."  81 Fed. Reg. at 43,446 (2016 catch up adjustment).  Every annual adjustment since January 18, 2017, has likewise included the following statement: "***[state plans] are required to increase their penalties in alignment with OSHA's penalty increases to maintain at least as effective penalty levels***."  [*See* ECF No. 1 ¶ 25 (citing 87 Fed. Reg. 2328, 2331–32 (Jan. 14, 2022) ("2022 Adjustment"); 86 Fed. Reg. 2964 (Jan. 14, 2021) (2021 adjustment); 85 Fed. Reg. 2292 (Jan. 15, 2020) (2020 adjustment); 84 Fed. Reg. 213 (Jan. 23, 2019) (2019 adjustment); 83 Fed. Reg. 7 (Jan. 2, 2018) (2018 adjustment); 82 Fed. Reg. 5373 (Jan. 18, 2017) (2017 adjustment) (emphasis added).][4]  The 2022 Adjustment also contains the same statement as the previous adjustments: states must increase their penalties "in alignment with OSHA's penalty increases to maintain at least as effective penalty levels."  [ECF No. 1 ¶¶ 25, 38-45.]

---

[4] The court takes judicial notice that the 2023 adjustment includes this same alignment directive. *See* 88 Fed. Reg. 2210 (Jan. 13, 2023).

## II. Plaintiffs' Challenge to the 2022 Adjustment Matching Penalties Mandate

According to Plaintiffs, OSHA has historically not enforced its annual penalty matching mandates against the State Plan. [ECF Nos. 1, 8.] But Plaintiffs point to recent events that, in their view, indicate OSHA is inclined to start enforcing the mandate.

First, OSHA's 2021 Federal Annual Monitoring Evaluation of the South Carolina State Plan, which was published in August 2022 and covers an evaluation period of October 1, 2020, through September 30, 2021, gives Plaintiffs pause. OSHA included an unprecedented "finding" in the report that the plan "has failed to adopt OSHA's initial FY 2016 maximum and minimum penalty increase and subsequent annual penalty amount increases." [ECF No. 1 ¶¶ 43–44; ECF No. 8-2 at 17–18.] This new finding concerns Plaintiffs because, they say, a "finding" is the first step in OSHA's state plan revocation process. [ECF No. 1 ¶¶ 44–45.]

Second, Plaintiffs are concerned by OSHA's recent dealings with the state of Arizona. [ECF No. 1 ¶ 42.] According to Plaintiffs, OSHA has begun the process to revoke Arizona's state plan "based in part on Arizona's refusal to have its civil penalties match the federal ones." [*Id.* ¶ 42; ECF No. 8 at 4-5.] This is particularly worrisome for Plaintiffs because South Carolina's state plan, like Arizona's, has maximum civil penalties that are not at least as great as the federal civil penalties. [ECF No. 1 ¶ 45.]

Finally, OSHA required state plans to indicate by March 15, 2022, whether they intend to increase their civil penalties to match the federal penalties by July 15, 2022. [ECF No. 8 at 8-9.] South Carolina officials informed OSHA that changes to the State Plan's civil penalties could be made only through legislative action. [*Id.*; ECF No. 8-1 ¶ 6.] The South Carolina General Assembly did not pass legislation altering those penalties during the 2022 legislative session. *Id.*

Concerned OSHA is on the brink of taking steps to revoke the State Plan, Governor McMaster and LLR filed suit against Defendants on August 9, 2022. [ECF No. 1.] Though Plaintiffs seek declarations that the 2022 Adjustment violates the APA, their challenge is not to the adjustment to the federal penalties itself, but the "requirement" that state plans increase their penalties to align with OSHA's penalty increases. *Id.* ¶¶ 54 (alleging OSHA does not have any basis in the 2022 Adjustment "for requiring state plans 'to increase their penalties in alignment with OSHA's penalty increases'"), 58 (alleging the 2022 Adjustment does not provide any explanation "for why state plans must 'increase their penalties in alignment with OSHA's penalty increases'"). Plaintiffs also seek permanent and preliminary injunctive relief, again based on the 2022 Adjustment's "requirement" that the State Plan enforce or impose civil penalties identical to the federal civil penalties in the 2022 Adjustment or any previous annual inflation adjustments. *Id.* ¶¶ 69-72, WHEREFORE paragraph. Plaintiffs later moved for a preliminary injunction on those grounds. [ECF No. 8.]

Defendants opposed Plaintiffs' motion and moved to dismiss Plaintiffs' complaint. [ECF Nos. 19, 20, 25.] Among other grounds, Defendants argue the court lacks jurisdiction over Plaintiff's claims because the portion of the 2022 Adjustment that Plaintiffs challenge—the "mandate," not the adjustment to the penalties itself—is not an "agency action" under the APA.[5] [ECF No. 19 pp. 15-17; ECF No. 25 at 5-7.] Plaintiffs counter it is a reviewable "agency action." [ECF No. 22 at 7-8.]

The court heard oral argument on the Motion for Preliminary Injunction and Motion to

---

[5] Defendants also argue Plaintiffs' claims should be dismissed for lack of standing and because Plaintiffs' claims are not plausible under Rule 12(b)96), that Plaintiffs' request for injunctive relief is barred under the *Thunder-Basin* doctrine, and that Plaintiffs did not demonstrate entitlement to injunctive relief. [*See* ECF Nos. 19, 20, 25.]

6

Dismiss on December 2, 2022. The motions are fully briefed and ripe for review.[6]

## DISCUSSION

Defendants challenge the court's jurisdiction over Plaintiffs' claims. Federal courts are courts of limited jurisdiction, and "possess only that power authorized by Constitution and statute[.]" *Exxon Mobil Corp. v. Alapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). As a court of limited jurisdiction, then, we must consider Defendants' jurisdictional challenge before addressing the merits of Plaintiffs' substantive claims. *See Indep. Equip. Dealers Ass'n v. E.P.A.,* 372 F.3d 420, 426 (D.C. Cir. 2004) (quoting *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94-102 (1998)). Defendants argue Plaintiffs do not challenge a reviewable APA action, and therefore the court does not have subject matter jurisdiction over Plaintiffs' claims. We agree.

The APA only allows a court to review an "agency action." 5 U.S.C. § 706. The APA defines "agency action" as "includ[ing] the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551 (13). At the hearing, counsel for Plaintiffs confirmed Plaintiffs are challenging the 2022 Adjustment—named a "Final Rule"—as a "rule." Under the APA, a "rule" is defined in pertinent part as "the whole or a part of an agency statement of general or particular applicability and future effect designed to

---

[6] Plaintiffs filed a supplemental authority after the hearing, ECF No. 32 ("Supplement"). Defendants submitted a reply soon after. [ECF No. 33.] The Supplement concerns DOL's 2023 Adjustment. Neither the Federal Rules of Civil Procedure nor the Local Civil Rules contemplate parties submitting supplemental authorities. *See* Local Civ. Rules 7.01–7.07 (D.S.C.) (allowing only three rounds of briefing on a motion); *see also* Fed. R. Civ. P. 6(c)(2) ("Any affidavit supporting a motion must be served with the motion."). And Plaintiffs did not seek this court's leave before filing the supplemental authority. *See Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 956 (4th Cir. 1995) (proper procedure is to move for leave to file); *Stoltie v. Cnty. of Lexington*, No. 0:19-CV-00387-SAL, 2020 WL 6802842, at *1 (D.S.C. Nov. 19, 2020), *aff'd*, 841 F. App'x 602 (4th Cir. 2021) (court need not consider supplement and surreply filed without leave). The court thus need not consider the Supplement, but, even if it did, it would not have made a difference to the court's analysis or altered the court's decision.

implement, interpret, or prescribe law or policy..." 5 U.S.C. § 551 (4).  The court's primary inquiry, then, is whether the 2022 Mandate is "designed to implement, interpret, or prescribe law." *Golden v. Zimmerman, LLC v. Domenech*, 599 F.3d 426, 432 (4th Cir. 2010).  We conclude it is not.

As Defendants concede, the 2022 Adjustment likely does involve an agency action—the adjustment of the federal civil penalties itself.  [ECF No. 25 at 6-7.]  And if Plaintiffs challenged the actual adjustment—the math—we probably would have no trouble finding Plaintiffs challenge a reviewable agency action.  But Plaintiffs do not challenge the adjustment itself.  Instead, they challenge the "mandate" that "[state plans] are required to increase their penalties in alignment with OSHA's penalty increases to maintain at least as effective penalty levels."  [ECF Nos. 1 ¶¶ 54, 58, 69-72; ECF No. 8, 8-9.]

The disputed language appears in the Federal Register under the section titled "Other Regulatory Considerations, as required by Executive Order No. 13132, Federalism, 64 Fed. Reg. 43,255 (Aug. 10, 1999)." 87 Fed. Reg. 2331-32.  It follows an overview of the federal civil penalty statute and OSHA regulations (29 U.S.C. 667, 29 CFR 1902.4©(2)(xi); 1902.37(b)(12)) and is ultimately followed by language suggesting the actual adjustment is "th[e] final rule" to which OSHA's consideration of "federalism implications" was required under Executive Order 13132. *See* 87 Fed. Reg. 2328, 2331–32 ("Other than as listed above, this final rule does not have federalism implications …").  This statement has appeared verbatim in every annual adjustment since 2017.  [*See* ECF Nos. 1, 8; 87 Fed. Reg. 2328, 2331–32 (2022 Adjustment); 86 Fed. Reg. 2964 (2021 adjustment); 85 Fed. Reg. 2292 (2020 adjustment); 84 Fed. Reg. 213 (2019 adjustment); 83 Fed. Reg. 7 (2018 adjustment); 82 Fed. Reg. 5373 (2017 adjustment).]

"By restating [OSHA's] established interpretation of the [federal civil penalties]

8

regulation, the [2022 Adjustment's state mandate language] tread[s] no new ground. It left the world just as it found it, and thus cannot be fairly described as implementing, interpreting, or prescribing law or policy." *See Indep. Equip. Dealers Ass'n*, 372 F.3d at 428 (dismissing notice and comment challenge to EPA letter under the Clean Air Act for lack of jurisdiction where EPA letter restated EPA's "hardly new" and unchanged interpretation of nonroad engine emissions regulations) (citing *Indus. Safety Equip. Ass'n v. EPA*, 837 F.2d 1115, 1120-21 (D.C. Cir. 1988) (agency statements that did not "change any law or official policy presently in effect" did not constitute a "rule" under the APA); *Golden & Zimmerman*, 599 F.3d at 432 ("[f]inding this reasoning of *Independent Equipment Dealers* persuasive" and thus "likewise hold[ing] a fact in an ATF Reference Guide was not "agency action" under 5 U.S.C. §§ 551 (13), 551 (4) when fact "d[id] not impose new legal requirements, having been reiterated over 13 times during the course of over 40 years[,]" but "[r]ather … attempt[ed] to restate or report what already exists in the relevant body of statutes, regulations, and rulings."). "Indeed, '[j]ust as it would be folly to allow parties to challenge a regulation anew each year upon the annual re-publication of the Code of Federal Regulations, so too it is silly to permit parties to challenge an established regulatory interpretation each time it is repeated.'" *Golden & Zimmerman*, 599 F.3d at 432 (4th Cir. 2010) (quoting *Indep. Equip. Dealers*, 372 F.3d at 428).

Under the reasoning of *Golden & Zimmerman* and *Independent Equipment Dealers*, the court concludes the challenged state matching mandate in the 2022 Adjustment does not constitute reviewable agency action under the APA. We thus do not have jurisdiction over Plaintiffs' claims and must dismiss their complaint.

Finally, because the court dismisses this case for lack of jurisdiction, we need not consider Defendants' other jurisdictional arguments or the merits of Plaintiffs' substantive claims. *See*

*Indep. Equip. Dealers Ass'n*, 372 F.3d at 428–29; *Golden & Zimmerman*, 599 F.3d at 433.

## CONCLUSION

Because the court lacks subject matter jurisdiction over Plaintiffs' challenge to the "mandate" portion of the 2022 Adjustment, we **GRANT** Defendants' Motion to Dismiss, ECF No. 20, under Fed. R. Civ. P. 12(b)(1), **DENY** Plaintiffs' Motion for Preliminary Injunction, ECF No. 8, and **DISMISS** this action without prejudice.

**IT IS SO ORDERED.**

/s/ Sherri A. Lydon
United States District Judge

March 2, 2023
Columbia, South Carolina