IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Henry McMaster, *in his official capacity as Governor of the State of South Carolina*, and South Carolina Department of Labor, Licensing, & Regulation,<br><br>      Plaintiffs,<br><br>v.<br><br>United States Department of Labor; Lori Chavez-DeRemer, *in her official capacity as Secretary of Labor*; Occupational Safety and Health Administration; and Douglas Parker, *in his official capacity as Assistant Secretary for Occupational Safety and Health*,<br><br>      Defendants. | Case No. 3:22-cv-02603-SAL<br><br><br>**ORDER** |

  This matter is before the court on the motion for relief from judgment and for leave to file an amended complaint filed by Governor Henry McMaster ("Governor McMaster") and the South Carolina Department of Labor, Licensing, and Regulation (collectively, "Plaintiffs"). [ECF No. 59.] The United States Department of Labor, Lori Chavez-DeRemer,[1] the Occupational Safety and Health Administration ("OSHA"), and Douglas Parker (collectively, "Defendants") oppose the motion, ECF No. 60, and Plaintiffs have replied, ECF No. 61.

---

[1] Secretary Chavez-DeRemer is automatically substituted as a defendant in place of former Secretary Martin J. Walsh under Fed. R. Civ. P. 25(d).

I.  **Background**

On March 2, 2023, the court entered an order dismissing this action for lack of subject matter jurisdiction. [ECF No. 34.] That order set forth in great detail the facts in this matter, and the court incorporates those facts by reference with only a brief summary below.

A.  **Federal OSHA Statutory and Regulatory Scheme and the South Carolina State Plan**

In 1970, Congress passed the Occupational Safety and Health Act ("OSH Act"), 29 U.S.C. §§ 651 *et seq*. to ensure "safe and healthful working conditions" across the country. Under the OSH Act, a state can either allow the federal government to regulate workplace safety directly or it can submit a state-specific plan for OSHA approval. *See* 29 U.S.C. § 667(b); 29 C.F.R. §§ 1902.1 *et seq*. South Carolina administers its own plan (the "State Plan").

To maintain OSHA approval, state plan standards must be "at least as effective" as federal standards "in providing safe and healthful employment and places of employment." 29 U.S.C. § 667(c)(2). In determining whether a state plan meets this "at least as effective" standard, OSHA measures the plan's "alternative standards, procedures, criteria, and rules . . . against" various "indices of effectiveness." 29 C.F.R. § 1902.4.

The OSH Act imposes civil and criminal penalties for violating its standards. 29 U.S.C. § 666. Congress amended those penalties in 1990. [ECF No. 1 ¶ 18.] The State Plan also includes civil enforcement penalties in the amounts of $70,000 and $7,000 depending on the type of violation. [ECF No. 1 ¶ 35; S.C. Code Ann. § 41-15-320.] These civil penalties match those in the OSH Act. *See* S.C. Code Ann. § 41-15-320; 29 U.S.C. § 666. The State Plan penalty amounts have not changed since the OSH Act's last amendment in 1990.

In 2015, Congress passed the Federal Civil Penalties Inflation Adjustment Act Improvements Act (the "2015 Federal Penalties Act"), 28 U.S.C. § 2461 note (Federal Civil

Penalties Inflation Adjustment Act of 1990). The 2015 Federal Penalties Act required OSHA to (1) make an initial catch-up inflation adjustment to federal civil penalty amounts "through an interim final rulemaking," which OSHA did on July 1, 2016, 81 Fed. Reg. 43430 (July 1, 2016) (the "2016 IFR"), and then (2) annually adjust federal penalties for inflation, 28 U.S.C. § 2461 note, which OSHA has done since 2017. [ECF No. 1 ¶¶ 20–25.] These inflation adjustments are exempt from notice and comment under the Administrative Procedure Act ("APA"). *See* 28 U.S.C. § 2461 note.[2]

The 2016 IFR also "amends" one of the OSHA regulatory indices of effectiveness by adding a reference to OSHA's annual civil penalty adjustment at 29 C.F.R. § 1903.15(d). *See* 81 Fed. Reg. at 43452. Prior OSHA regulations provided that OSHA considers whether the state plan "[p]rovides effective sanctions against employers who violate State standards and orders, such as those set forth in the Act." The 2016 IFR amendment, however, adds that OSHA will analyze state-plan effectiveness by reference to "standards and orders, such as those set forth in the Act, *and in 29 C.F.R. 1903.15(d)*." *See* 29 C.F.R. § 1902.4(c)(2)(xi) (emphasis added); *see also* 36 Fed. Reg. 20751, 20754 (Oct. 29, 1971) (codified at 29 C.F.R. § 1902.4(c)(2)(xi)) (original language).

The 2016 IFR further states that "OSHA's penalty increases under the Inflation Adjustment Act will necessitate an increase to the maximum and minimum penalty amounts required by states that administer their own occupational safety and health programs as well." 81 Fed. Reg. at 43446 (2016 catch up adjustment). Every annual adjustment since January 18, 2017, has likewise included the following statement: "[state plans] are required to increase their penalties in alignment with OSHA's penalty increases to maintain at least as effective penalty levels." *See* ECF No. 1 ¶ 25 (citing 87 Fed. Reg. 2328, 2332 (Jan. 14, 2022) ("2022 Adjustment"); 86 Fed. Reg. 2964, 2966

---

[2] Pursuant to 5 U.S.C. § 553, rules are generally proposed for public comment, commented on, revised, and then published by the relevant federal agency as a final rule. Whereas an interim final rule is effective immediately upon publication, without the prior comment period.

3

(Jan. 14, 2021) (2021 adjustment); 85 Fed. Reg. 2292, 2295 (Jan. 15, 2020) (2020 adjustment); 84 Fed. Reg. 213, 215 (Jan. 23, 2019) (2019 adjustment); 83 Fed. Reg. 7, 9 (Jan. 2, 2018) (2018 adjustment); 82 Fed. Reg. 5373, 5378 (Jan. 18, 2017) (2017 adjustment)).[3]

### B.    Plaintiffs' Challenge to the 2022 Adjustment Penalty-Matching Requirement

Plaintiffs brought this action based on concerns OSHA would start enforcing its annual penalty-matching mandate against the State Plan—something they claim OSHA has not historically done. *See* ECF Nos. 1, 8. OSHA required state plans to indicate by March 15, 2022, whether they intended to increase their civil penalties to match the federal penalties by July 15, 2022. [ECF No. 8 at 8–9.] South Carolina officials informed OSHA that changes to the State Plan's penalties could be made only through legislative action. *Id.*; ECF No. 8-1 ¶ 6. The South Carolina General Assembly did not alter the penalties during the 2022 legislative session. *Id.*

Concerned that OSHA might take steps to revoke the State Plan, Plaintiffs sued Defendants on August 8, 2022. [ECF No. 1.] Though they sought a declaration that the 2022 Adjustment violated the APA, they did not challenge the adjustment to federal penalties itself, but rather the "requirement" that state plans increase their penalties to align with OSHA's penalty increases. *Id.* ¶¶ 54 ("OSHA has no legal basis in the 2022 Adjustment for requiring state plans 'to increase their penalties in alignment with OSHA's penalty increases.'" (quoting 87 Fed. Reg. at 2332)), 58 ("The 2022 Adjustment includes no explanation for why state plans must 'increase their penalties in alignment with OSHA's penalty increases'" (quoting 87 Fed. Reg. at 2332)). Plaintiffs also sought permanent and preliminary injunctive relief against enforcement of the "requirement" that the

---

[3] The court takes judicial notice that the 2023–2025 adjustments include this same alignment directive. *See* 88 Fed. Reg. 2210, 2213 (Jan. 13, 2023) (2023 adjustment); 89 Fed. Reg. 1810, 1813 (Jan. 11, 2024) (2024 adjustment); 90 Fed. Reg. 1854, 1857 (Jan. 10, 2025) (2025 adjustment).

4

State Plan impose penalties identical to those in the 2022 Adjustment or prior inflation adjustments. *Id.* ¶¶ 69–72, WHEREFORE paragraph.

Defendants moved to dismiss Plaintiffs' complaint, arguing *inter alia* that the court lacked jurisdiction because the challenged "mandate"—as opposed to the actual adjustment—was not an "agency action" under the APA. [ECF Nos. 19 at 15–17, 25 at 5–7.] The court agreed and dismissed Plaintiffs' claims without prejudice. [ECF No. 34 at 7–10.] Consistent with the court's order, judgment was entered against Plaintiffs on March 2, 2023. [ECF No. 35.] Plaintiffs now seek relief from that judgment and leave to file an amended complaint. [ECF No. 59.] Their motion is denied for the reasons below.

**II.    Legal Standard**

    **A.    Postjudgment Motions to Amend**

"When an action has been dismissed with a final judgment, 'there is no pending complaint to amend.'" *Daulatzai v. Maryland*, 97 F.4th 166, 177 (4th Cir. 2024) (quoting *Calvary Christian Ctr. v. City of Fredricksburg*, 710 F.3d 536, 540 (4th Cir. 2013)). Accordingly, the Fourth Circuit has "repeatedly recognized, 'a motion to amend filed *after* a judgment of dismissal has been entered cannot be considered until the judgment is vacated.'" *Id.* (quoting *Calvary Christian Ctr.*, 710 F.3d at 539). "[T]his may be accomplished either by the authority of Rule 59(e) or Rule 60(b)." *Id.* "The difference between the two rules, however, is material, both in scope and purpose, and, by their own terms, different standards apply." *Id.*

In *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462 (4th Cir. 2011), relying on its decision in *Laber v. Harvey*, 438 F.3d 404 (4th Cir. 2006), the court explained as follows:

> [A] district court may not grant a post-judgment motion to amend the complaint unless the court first vacates its judgment pursuant to Fed. R. Civ. P. 59(e) or 60(b). To determine whether vacatur is warranted, however, the court need not concern itself with either of those rules' legal standards. The court need only ask whether

5

> the amendment should be granted, just as it would on a prejudgment motion to amend pursuant to Fed. R. Civ. P. 15(a). In other words, a court should evaluate a postjudgment motion to amend the complaint "under the same legal standard as a similar motion filed before judgment was entered—for prejudice, bad faith, or futility."

*Katyle*, 637 F.3d at 470–71 (quoting *Laber*, 438 F.3d at 427).

But in *Daulatzai*, the court revisited *Katyle* and found that it "failed, without explanation, to recognize the material differences between Rule 59(e) and Rule 60(b)."[4] 97 F.4th at 177.

> Both *Laber* and *Katyle* were grounded on the reality that the standard for granting a Rule 59(e) motion is so broad and open ended that the court should apply the more specific standard of Rule 15(a) where prejudice, bad faith, or futility are brought to bear.
>
> Yet in *Katyle*, we also inadvertently indicated that the same collapsing of standards that occurs when both Rule 59(e) and Rule 15(a) are invoked would also occur if Rule 60(b) were invoked to vacate the judgment.

*Id.* The *Daulatzai* court clarified that no such collapsing of standards occurs in the context of a Rule 60(b) motion.

Instead, to obtain relief from a final judgment under Rule 60(b), a party must first satisfy one of the six grounds for relief enumerated in the Rule. *Id.* at 178. "And if a plaintiff seeks to reopen a case under Rule 60(b) in order to file an amended complaint, she must satisfy one of the Rule 60(b) grounds *before a* court may consider her motion to amend." *Id.* "The motion to amend will then be analyzed under the distinct standard of Rule 15(a) 'for prejudice, bad faith, or futility.'" *Id.* (quoting *Laber*, 438 F.3d at 427).

---

[4] "Because a Rule 60(b) motion does not merge into the judgment but grants relief from it, the time for filing is longer. Yet, because the greater time for filing implicates the policy favoring finality, the grounds for relief are narrower, as established by the text of the Rule." *Daulatzai*, 97 F.4th at 178.

6

**B.     Rule 60(b)**

"Rule 60(b) authorizes a court to 'relieve a party . . . from a final judgment' long after the judgment is final." *Id.* "But a party can obtain such relief based on only the six grounds identified [in the Rule]." *Id.* Those grounds are as follows:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b) ;

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). The last option is available only when Rules 60(b)(1) through (b)(5) are inapplicable. *Daulatzai*, 97 F.4th at 178.

**III.     Discussion**

At the outset, the court notes that "[t]he remedy afforded by Rule 60(b) is an 'extraordinary' one that is 'only to be invoked upon a showing of exceptional circumstances.'" *K.C. ex rel. Africa H. v. Shipman*, 716 F.3d 107, 117 n.3 (4th Cir. 2013) (quoting *Compton v. Alton S.S. Co.*, 608 F.2d 96, 102 (4th Cir. 1979)). "To prevail, a party must first demonstrate (1) timeliness, (2) a meritorious defense, (3) a lack of unfair prejudice to the opposing party, and (4) exceptional circumstances." *Justus v. Clarke*, 78 F.4th 97, 105 (4th Cir. 2023) (quoting *Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC*, 859 F.3d 295, 299 (4th Cir. 2017)). Once a party has met this threshold, he must

7

then show that he qualifies for relief under one of the six specific categories listed above. *Id.* at 105–06.

Plaintiffs move for relief from the judgment under Rule 60(b)(1) and (6). *See* ECF No. 59 at 1. Yet their motion does little to address the standards under those rules. Instead, Plaintiffs assume they are entitled to relief under Rule 60(b) and proceed directly to Rule 15 analysis. This is precisely what the court in *Daulatzai* disapproved of.[5] Nonetheless, after attempting to discern from Plaintiffs motion whether they are entitled to relief under the applicable Rule 60 standards, the court concludes they are not.

    **A.**    **Rule 60(b)(1)**

Under Rule 60(b)(1), the court may grant relief based on "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). "Relief, however, is inappropriate simply because a litigant is unhappy with the judgment; there must be some showing of why the litigant failed to avoid mistake, inadvertence, surprise, or excusable neglect." *Coleman v. Chase Bank*, No. 3:14-CV-101, 2014 WL 4161986, at *2 (E.D. Va. Aug. 19, 2014) (quoting *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, No. 94-2569, 1995 U.S. App. LEXIS 16798, at *10 (4th Cir. July 11, 1995)).

Based on Plaintiffs' motion, it is unclear which of the circumstances listed in Rule 60(b)(1) they believe applies here. Are they claiming mistake? Inadvertence? Surprise? Excusable neglect?

---

[5] *See* 97 F.4th at 176 ("Daulatzai . . . stated in her motion that the district court should vacate the judgment under Rules 60(b)(1), (2), (3), and (6) 'to correct a clear error of law' and to allow her to file the proposed Third Amended Complaint pursuant to Rule 15(a)(2). But despite that recitation, she provided the district court with no explanation of how Rules 60(b)(1), (2), (3), or (6) were satisfied . . . . Rather, she passed over satisfying those requirements and proceeded to argue that both her Rule 60(b) motion and her Rule 15(a) motion should be resolved by applying the liberal standard for granting amendments—*i.e.*, that leave to amend should be freely granted 'when justice so requires.' Fed. R. Civ. P. 15(a)(2).").

To the extent that Plaintiffs would argue their decision to challenge the 2022 Adjustment rather than the 2016 IFR was a "mistake"—the court disagrees. A strategic decision made consciously and with full awareness of the available alternatives is not a mistake in the sense contemplated by the Rule.

Nor can Plaintiffs reasonably claim inadvertence or surprise. Indeed, they acknowledge in their Reply that Defendants "invited" them to amend their complaint at a December 2022 hearing, but they elected not to do so. *See* ECF No. 61 at 2–4; *see also* ECF No. 60-1 at 71:8–9 ("I think we're good here. I don't think we need an amended complaint."). Even assuming Plaintiffs are correct in arguing that "[t]he Court's conclusion on the 2022 Adjustment did not close the door on Plaintiffs' 'alternative' approach to challenging the mandate," ECF No. 61 at 3, their awareness of the potential shortcomings of their complaint *does* close the door on their ability to claim "inadvertence" or "surprise" under Rule 60(b)(1).

The court need not consider whether Plaintiffs are entitled to relief due to "*excusable neglect*" because the problems with their original complaint were not the result of neglect at all. They cannot show "excusable neglect" any more than they can show "mistake."

Finally, regardless of which Rule 60(b)(1) theory Plaintiffs advance—they have failed to make the threshold showing of "extraordinary circumstances" required by the Rule. *See Justus*, 78 F.4th at 105. Accordingly, as explained below, their motion likewise fails under Rule 60(b)(6).

B.   **Rule 60(b)(6)**

Rule 60(b)(6) "gives a court authority to relieve a party from a judgment for 'any other reason' not articulated in sections (1) through (5) . . . , but only when the movant demonstrates 'extraordinary circumstances.'" *Wells Fargo Bank, N.A.*, 859 F.3d at 299. The Supreme Court has

limited the application of Rule 60(b)(6) to cases where "such action is appropriate to accomplish justice." *Klapprott v. United States*, 335 U.S. 601, 615 (1949).

"In evaluating whether circumstances are sufficiently extraordinary to justify relief, a district court must 'delicately balance the sanctity of final judgments, expressed in the doctrine of res judicata, and the incessant command of the court's conscience that justice be done in light of all the facts.'" *Fed. Trade Comm'n v. Ross*, 74 F.4th 186, 194 (4th Cir. 2023) (quoting *United States v. Welsh*, 879 F.3d 530, 536 (4th Cir. 2018)). "The broad power granted by Rule 60(b) is 'not for the purpose of relieving a party from free, calculated and deliberate choices he has made." *Collins v. Cash Am. E. Inc.*, No. 2:20-cv-02989-MHC, 2023 WL 11959314, at *4 (D.S.C. Jan. 13, 2023) (quoting *Gant v. City of N. Charleston*, No. 2:08-3257-CWH, 2010 WL 11651901, at *2 (D.S.C. July 13, 2010)); *see also Kile v. United States*, 915 F.3d 682, 688 (10th Cir. 2019) ("Rule 60(b)(6) cannot be used to set aside a free, counseled, deliberate choice whose consequences in hindsight are unfortunate." (quotations omitted)); *People for the Ethical Treatment of Animals v. U.S. Dep't of Health & Hum. Servs.*, 901 F.3d 343, 355 (D.C. Cir. 2018) ("[Rule 60(b)(6)] should not be employed simply to rescue a litigant from strategic choices that later turn out to be improvident." (quotations omitted)).

Here, the court finds no exceptional circumstances that would warrant granting Plaintiffs' requested relief. No injustice results from holding Plaintiffs accountable for the consequences of their chosen litigation strategy. To grant relief in these circumstances would undermine the court's policy regarding the sanctity of final judgments. *See Fed. Trade Comm'n*, 74 F.4th at 194.

10

## CONCLUSION

For these reasons, Plaintiffs' motion, ECF No. 59, is **DENIED**.

July 21, 2025  
Columbia, South Carolina

Sherri A. Lydon  
United States District Judge